# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| GERALD MCCANN, | ) |
| | ) Case No. 8:23-cv-511 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MAHALAK AUTO GROUP | ) |
| LAKE WALES, LLC | ) |
| (d/b/a) LAKE WALES CHRYSLER | ) |
| DODGE JEEP RAM | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the plaintiff, GERALD MCCANN, by and through his attorneys, SMITHMARCO, P.C., and for his Complaint against the defendant, MAHALAK AUTO GROUP LAKE WALES, LLC d/b/a LAKE WALES CHRYSLER DODGE JEEP RAM, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

4.     GERALD MCCANN, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Haines City, County of Polk, State of Florida.

5.     At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

6.     MAHALAK AUTO GROUP LAKE WALES, LLC d/b/a LAKE WALES CHRYSLER DODGE JEEP RAM, (hereinafter, "Defendant") is a business entity engaged in selling automobiles, and in doing so, assisting in providing consumer loans and financing as well as other financial services s within the State of Florida. Defendant's principal place of business is located in the State of Florida. Defendant is incorporated in the State of Florida.

7.     At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

### IV.   ALLEGATIONS

8.     As alleged in this pleading, "credit reports" are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

9.     Plaintiff does not currently have an account or loan open with Defendant.

10.     Plaintiff has not historically had an account or loan open with Defendant.

11.     Plaintiff does not currently owe any debt to Defendant.

12. Plaintiff has not historically owed any debt to Defendant.

13. Plaintiff does not currently have any personal business relationship with Defendant.

14. As of on or about September 10, 2022, Plaintiff did not have an account or loan open with Defendant.

15. As of on or about September 10, 2022, Plaintiff did not owe any debt to Defendant.

16. As of on or about September 10, 2022, Plaintiff did not have any personal business relationship with Defendant.

17. As of on or about September 10, 2022, Plaintiff did not submit an application for financing to Defendant.

18. On or about September 10, 2022, Plaintiff appeared at Defendant's place of business to view merchandise on Defendant's business lot, and test drive a few vehicles.

19. On or about September 10, 2022, when Plaintiff appeared at Defendant's place of business, Plaintiff did not apply for credit or indicate in any way an intention to apply for credit with Defendant.

20. Given the facts delineated above, Defendant had no information in its possession to suggest that Plaintiff was trying to obtain credit from Defendant.

21. Equifax Information Services, LLC (hereinafter, "Equifax") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Equifax

is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

22. Trans Union, LLC (hereinafter, "Trans Union") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Trans Union is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

23. Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

24. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only. See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

25. The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.*, 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128). *See also*, *United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

26. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

27. Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

28. Defendant is a subscriber and user of consumer reports issued by Equifax and Trans Union.

29. On or about September 10, 2022, despite being cognizant of the facts as delineated above, Defendant procured from Equifax and Trans Union a copy of Plaintiff's consumer report at which time, Defendant made a general or specific

certification to Equifax and Trans Union that Defendant sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA.

30.  The certification made by Defendant to Equifax and Trans Union was false.

31.  Despite certifying to Equifax and Trans Union that it had a permissible purpose for procuring Plaintiff's consumer report, Defendant had no such permissible purpose.

32.  At no time on or prior to September 10, 2022, did Plaintiff consent to Defendant obtaining his consumer report.

33.  On or about September 10, 2022, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from Equifax and Trans Union Plaintiff's individual and personal credit report.

34.  On or about September 10, 2022, at the time Defendant impermissibly procured from Equifax and Trans Union Plaintiff's individual and personal credit report, Plaintiff's Confidential Information was published to Defendant.

35.  On or about September 10, 2022, at the time Defendant impermissibly procured from Equifax and Trans Union Plaintiff's individual and personal credit report, Defendant reviewed Plaintiff's Confidential Information.

36. On or about September 10, 2022, at the time Defendant impermissibly procured from Equifax and Trans Union Plaintiff's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Plaintiff's Confidential Information.

37. On or about September 10, 2022, at the time Defendant impermissibly procured from Equifax and Trans Union Plaintiff's individual and personal credit report, Defendant obtained information relative to Plaintiff's credit history and credit worthiness.

38. Plaintiff has a right to have her Confidential Information kept private.

39. No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless either Plaintiff provides her consent for the release of the information, or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

40. Defendant procured from Equifax and Trans Union Plaintiff's consumer report without his knowledge or consent.

41. Defendant procured from Equifax and Trans Union Plaintiff's consumer report without a permissible purpose.

42. Given the facts delineated above, at or around the time that Defendant procured Plaintiff's consumer report, Defendant knew that it lacked a permissible purpose to procure Plaintiff's consumer report from a consumer reporting agency but proceeded to do so anyway.

43. Given the facts delineated above, at or around the time that Defendant procured Plaintiff's consumer report, Defendant should have known that it lacked a permissible purpose to procure Plaintiff's consumer report from a consumer reporting agency but proceeded to do so anyway.

44. By its actions, when Defendant impermissibly procured from Equifax and Trans Union Plaintiff's individual and personal credit report, Defendant invaded Plaintiff's privacy.

45. By its actions, when Defendant impermissibly procured from Equifax and Trans Union Plaintiff's individual and personal credit report, Defendant effectively intruded upon the seclusion of Plaintiff's private affairs.

46. When Plaintiff discovered that Defendant had procured her personal, private and confidential information from Equifax and Trans Union, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of her privacy.

47. When Plaintiff discovered that Defendant had procured her personal, private and confidential information from Equifax and Equifax and Trans Union, Plaintiff was extremely worried, concerned and frustrated that Defendant's impermissible access of her personal, private and confidential information from one or more consumer reporting agency could continue indefinitely.

48. When Plaintiff discovered that Defendant had procured his Confidential Information from Equifax and Trans Union, Plaintiff was concerned about the continued security and privacy of his Confidential Information.

49. When Plaintiff discovered that Defendant had procured his Confidential Information without a permissible purpose, Plaintiff believed that Defendant would continue to act with impunity and continue to procure her Confidential Information indefinitely.

50. The actions of Defendant caused Plaintiff to suffer from frustration, anxiety and emotional distress that manifested itself such that: (i) Plaintiff had difficulty falling to sleep and/or staying asleep; (ii) Plaintiff had a loss of appetite; (iii) Plaintiff became irritable to family members.

## V. JURY DEMAND

51. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, GERALD MCCANN, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

    a. All actual compensatory damages suffered;

    b. Statutory damages of $1,000.00 for Defendant's violation of the FCRA;

    c. Punitive damages;

    d. Plaintiff's attorneys' fees and costs; and,

    e. Any other relief deemed appropriate by this Honorable Court.

        Respectfully submitted,
**MAHALAK AUTO GROUP LAKE WALES, LLC d/b/a LAKE WALES CHRYSLER DODGE JEEP RAM**

By:   <u>s/ David M. Marco</u>
      Attorney for Plaintiff

<u>Dated: March 8, 2023</u>

David M. Marco *(Lead Counsel)*
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
7204 Kyle Court
Sarasota, FL 34240
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail:   dmarco@smithmarco.com